# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RICARDO de JESUS CISNEROS,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Respondents. | MEMORANDUM DECISION<br>AND ORDER<br>DENYING PETITION FOR WRIT<br>OF HABEAS CORPUS<br><br>Case No. 2:25-cv-1170-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge<br><br>FOR PUBLICATION |

Petitioner Ricardo de Jesus Cisneros seeks a writ of habeas corpus requiring the Government either to release him from custody or to afford him a bond hearing so it may consider whether he should be detained or released during the pendency of removal proceedings that the Government has instituted against him. The court denies his petition.

## I.

Mr. Cisneros is a Mexican citizen who entered the United States in 2004 without inspection or authorization. *See* Dkt. No. 1 at 10. He was arrested by ICE on December 30, 2025, and was first held at the ICE Enforcement and Removal Operations center in West Valley City, Utah. *See id*. at 8, 10.

Mr. Cisneros has since been transferred to the Henderson Detention Center in Nevada. *See* Dkt. No. 8-1 at 3 ¶ 13. He was originally scheduled for an "initial hearing in removal proceedings before the Las Vegas Immigration Court on February 9, 2026," though that hearing was later rescheduled for January 26, 2026. *Id.* at 3 ¶¶ 12, 14. He has remained in custody since his December arrest. *See id.* at 3 ¶ 16.

II.

A petitioner seeking habeas corpus relief under 28 U.S.C. § 2241 "attack[s] . . . the legality of [his] custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, Mr. Cisneros's petition rests on the premise "that he is being unlawfully detained by the Executive." *Id.* at 486. He thus "bears the burden to demonstrate" that no law justifies his detention or that the law that does so is unconstitutional. *Nunez v. Carter*, No. 22-cv-1261-CNS, 2022 WL 17416658, at *1 (D. Colo. Dec. 5, 2022); *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). The court concludes that he has failed to carry this burden.

A.

Mr. Cisneros first argues that his detention without a bond hearing is unauthorized by statute. Specifically, he maintains that he is detained under 8 U.S.C. § 1226(a) and is thus entitled to a hearing before an immigration judge to determine whether he should be released or detained pending a final removal decision.

The Government responds that Mr. Cisneros is detained not under Section 1226(a), but under 8 U.S.C. § 1225(b)(2)(A), which, it contends, requires Mr. Cisneros's detention and leaves it no discretion to release Mr. Cisneros pending resolution of the removal proceedings.[1] Mr. Cisneros replies that Section 1225(b)(2)(A) does not apply to him because he has not applied for admission and was not detained when arriving at the border.

---

[1] The Government also argues that the court lacks jurisdiction over Mr. Cisneros's petition under 8 U.S.C. § 1252(a)(5) and (b)(9), which limit judicial review "of an order of removal" to an appeal of the Board of Immigration Appeals' "final order." But the Tenth Circuit has held that these provisions do not "cut off claims that have a tangential relationship with pending removal proceedings" and instead apply only when a party is "in fact . . . challenging removal proceedings." *Mukantagara v. United States Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023). And the Supreme Court has squarely held that "§ 1252(b)(9) does not present a jurisdictional bar" to judicial review of "the decision to detain" an alien pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

2

**1.**

Under Section 1225(a)(1), "[a]n alien present in the United States who has not been admitted *or* who arrives in the United States . . . shall be deemed for the purposes of this chapter an applicant for admission." (Emphasis added.) Congress's use of the disjunctive "or" indicates that Mr. Cisneros qualifies as an applicant for admission so long as he satisfies *either* of the conditions surrounding the word "or." *See United States v. Pauldino*, 443 F.2d 1108, 1112 (10th Cir. 1971). This statute, in other words, covers not only aliens newly arriving in the United States, but also aliens "present in the United States" who have not been "admitted."

Mr. Cisneros is clearly "present in the United States." The court must thus consider whether he has been "admitted." For purposes of the immigration code, this word is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Mr. Cisneros concedes that he was never inspected, and he does not argue that any immigration officer authorized him to enter the United States. It follows that he has not been admitted. He is thus an "applicant for admission" under the plain terms of Section 1225(a)(1).

Section 1225(b)(2)(A), in turn, provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a of this title." Given the structure of this sentence, the court sees no plausible basis for interpreting the phrase "an alien seeking admission" to have a narrower meaning than "an alien who is an applicant for admission." And other provisions of Section 1225

suggest either that these phrases are synonymous, *see* 8 U.S.C. § 1225(a)(5), or that the former phrase is *broader* than the latter, *see id.* § 1225(a)(3).[2]

In sum, Mr. Cisneros is an "applicant for admission" and is "seeking admission" within the meaning of Section 1225(b)(2)(A). But he offers no evidence or argument that he is "clearly and beyond a doubt entitled to admitted." This statute thus requires his detention while his removal proceedings are pending.

**2.**

Mr. Cisneros does not seriously dispute the textual analysis that leads to this conclusion. He instead argues that this reading of the statute is "inconsistent with the statutory structure, legislative history, and decades of settled agency practice." Dkt. No. 9 at 2. And in his response to the Government's notice of supplemental authority, he also contends that the court should reject this interpretation based on the assertedly implausible and unintended consequences that would follow from it and what he describes as the great weight of authority rejecting it. *See generally* Dkt. No. 17. His arguments are not well taken.

**a.**

Starting with structure, the court rejects Mr. Cisneros's argument that reading Section 1225 in accordance with its plain terms would "render § 1226(a) meaningless." Dkt. No. 9 at 5. After all, even if Section 1225 covers all aliens who enter the United States without inspection and authorization, Section 1226(a) still applies to other aliens who *have* been admitted, including, for example, those who "overstay their visas, become deportable on many

---

[2] Mr. Cisneros does not argue that "an alien seeking admission" means something narrower than (or different from) "an alien who is an applicant for admission." And the court finds the Fifth Circuit's recent decision rejecting such an argument highly persuasive. *See Buenrostro-Mendez v. Bondi*, — F.4th —, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

4

different grounds, or were admitted erroneously due to fraud or some other error." *Buenrostro-Mendez*, 2026 WL 323330, at *7.³

Mr. Cisneros also argues that the Government's reading of Section 1225 would render superfluous 8 U.S.C. § 1226(c)(1)(E), which was recently added to the statute by the Laken Riley Act. *See* Dkt. No. 17 at 7. That provision requires the detention pending removal of certain inadmissible aliens who have been charged with, arrested for, or convicted of specified criminal conduct, or who have admitted committing such conduct, when those aliens are released from the custody of the criminal justice system. Mr. Cisneros argues that this amendment would be "inexplicable if aliens present without inspection were already categorically barred from bond under 8 U.S.C. § 1225(b)(2)." *Id.* But the overlap between these provisions provides no basis for reading Section 1225(b)(2) more narrowly than its plain text warrants; as the Supreme Court has explained, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020).

In all events, although the statutes overlap, they are not truly redundant. Mr. Cisneros is correct that Subsection 1226(c)(1)(E) applies to some aliens who are applicants for admission within the meaning of Section 1225(a)(1). But it does not apply only to such aliens. To the

---

³ In his response to the Government's notice of supplemental authority, Mr. Cisneros asserts that, if Section 1225 is read in accordance with the plain meaning of its text, then "visa overstays pursuing adjustment of status in removal proceedings, who are likewise applicants for admission, would also be categorically barred from bond." Dkt. No. 17 at 6–7. He cites 8 U.S.C. §§ 1255(a) and 1229a(c)(2)(A) in support of this assertion, but neither statute suggests—let alone provides—that aliens who overstay their visas and seek to adjust their status are deemed applicants for admission. By its plain terms, Section 1255(a) applies only to aliens who have been "inspected and admitted or paroled into the United States" or who have "an approved petition for classification as a VAWA self-petitioner." And although Subsection 1229a(c)(2)(A) (which Mr. Cisneros cites) does address the burden of proof in removal proceedings involving an "applicant for admission," Subsection 1229a(c)(3)(A) (which he does not cite) separately addresses these burdens in removal proceedings involving "an alien who has been admitted to the United States."

contrary, it extends to any alien "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title" who has been detained by the criminal justice system in connection with any of the specified criminal conduct. 8 U.S.C. § 1226(c)(1)(E)(i). And while Subsection 1182(a)(6)(A) does cover aliens "present in the United States without being admitted or paroled," Subsection 1182(a)(6)(C) generally extends to "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure *or has procured*) a visa, other documentation, *or admission into the United States* or other benefit provided under this chapter." (Emphases added.) In other words, this subsection extends to aliens who have obtained admission into the United States through fraud or willful misrepresentations. Conversely, as the Fifth Circuit recently recognized, Section 1226(c) not only requires detention, but also "eliminates the option of parole"—a discretionary form of relief otherwise available under Section 1225(b)(2)(A)—"for those to whom it applies." *Buenrostro-Mendez*, 2026 WL 323330, at *7.

Other provisions of Section 1225 confirm, moreover, that this statute is not limited to aliens arriving at the border. Specifically, Subsection 1225(b)(1)—which requires immigration officers to order certain aliens summarily removed "without further hearing or review"—may be applied, with a narrow exception, not only to "an alien . . . who is arriving in the United States" but also to "an alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." And although Subsection 1225(b)(1) imposes these more stringent requirements on only a subset of those aliens who have not been admitted into the United States, Subsection 1225(b)(2) is not so

6

limited. Rather, as the Supreme Court has recognized, it is a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287.

b.

As for legislative history, it, of course, "is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). And it does not appear to support Mr. Cisneros's position in all events.

Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act in 1996, Section 1225 applied only to aliens arriving at a port of entry and required that such aliens be placed in exclusion proceedings and detained until those proceedings concluded. *See* 8 U.S.C. § 1225(a)–(c) (1988); *Buenrostro-Mendez*, 2026 WL 323330, at *1; *Hing Sum v. Holder*, 602 F.3d 1092, 1099–1100 (9th Cir. 2010). By contrast, aliens "in the United States" who "entered . . . without inspection" were subject to deportation proceedings, 8 U.S.C. § 1251(a)(2) (1988), and were allowed to request release on bond, *see Buenrostro-Mendez*, 2026 WL 323330, at *1; *Hing Sum*, 602 F.3d at 1100.

Under the pre-IIRIRA framework, whether aliens were subject to exclusion or deportation proceedings thus depended on whether they had "entered" the United States. But this focus "resulted in an anomaly": "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." *Hing Sum*, 602 F.3d at 1100.

The IIRIRA sought to address this anomaly "by substituting 'admission' for 'entry' and by replacing deportation and exclusion proceedings with a general 'removal' proceeding." *Id*. By expanding Section 1225 to address not only aliens who presented themselves at a port of entry, but *all* applicants for admission—that is, aliens present in the United States who have not been

admitted as well as those arriving at the border—Congress "ensure[d] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc). The statute thus eliminated the "equities and privileges" previously afforded "illegal aliens who . . . entered the United States without inspection" that were "not available to aliens who present[ed] themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225 (1996)). Mr. Cisneros's proposed reading of Section 1225 would undo this legislative fix and reintroduce the anomaly Congress sought to eliminate.[4]

### c.

Although Mr. Cisneros asserts that his interpretation of Section 1225 comports with longstanding agency practice, the formal regulatory landscape, at least, does not appear to support his contention. In particular, 8 C.F.R. § 235.3(b)(1)(ii) has long provided for mandatory detention of any "alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility." (Again, aliens who cannot make this showing may be summarily removed under 8 U.S.C. § 1225(b)(1).)

Even if the Bureau of Immigration and Customs Enforcement has not in practice applied Section 1225(b)(2) to aliens like Mr. Cisneros during previous presidential administrations, its *current* understanding that such aliens are subject to this statute is perfectly clear. *See Matter of*

---

[4] For those who care about such things, the court notes that the House Judiciary Committee Report further confirms this understanding. This report makes clear that the IIRIRA was intended to replace certain aspects of the then-current "entry doctrine" that resulted in illegal aliens who had entered the United States without inspection receiving more favorable treatment in immigration proceedings than aliens who presented themselves for inspection at a port of entry by providing that "aliens who ha[d] entered without inspection" would no longer be "considered to have been admitted." H.R. Rep. No. 104-469, pt. 1, at 225–26.

*Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025). And that understanding comports with both the plain terms of Section 1225 and the agency's formal regulations.

Agencies are of course free to "change[] their minds . . . as long as the proper procedures [a]re followed." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007). Mr. Cisneros identifies no required procedure that ICE failed to take in adopting its current interpretation of Section 1225. Rather, he argues that "decades of consistent executive practice are 'significant in determining whether . . . power was actually conferred'" by a statute. Dkt. No. 17 at 4 (quoting *West Virginia v. EPA*, 597 U.S. 697, 725 (2022)). But that interpretive principle applies only to "ambiguous statutory text." *West Virginia*, 597 U.S. at 723 (cleaned up). The relevant text of Section 1225, by contrast, is perfectly clear.[5]

In all events, the proper interpretation of this statute is a question of law for this court, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024), and even "[y]ears of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text," *Buenrostro-Mendez*, 2026 WL 323330, at *8. The court is, of course, willing to consider agency interpretations for whatever persuasive value they may have. *See Loper Bright*, 603 U.S. at 402. But Mr. Cisneros offers no reasoned administrative analysis in support of his position.[6]

---

[5] The *West Virginia* decision also invoked the major-questions doctrine. *See* 597 U.S. at 724. Mr. Cisneros has not argued that this doctrine applies here. Nor could he; that doctrine applies only when an agency acts without "clear congressional authorization," *id.* at 732; *see also id.* at 742 n.3 (Gorsuch, J., concurring), such as the clear mandate provided by the plain language of Section 1225.

[6] In his response to the Government's notice of supplemental authority, Mr. Cisneros cites an administrative statement, in response to comments relating to an interim rule that appears to have included the regulation now codified at 8 C.F.R. § 235.3(b)(1)(ii), that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *See* Dkt. No. 17 at 4 (citing 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)); 62 Fed. Reg. 10312, 10355. Mr. Cisneros neither identifies any justification or analysis offered by the agency in support of this statement nor cites any portion of the actual interim rule that

#### d.

Mr. Cisneros contends that reading Section 1225 in accordance with its plain terms would lead to "a regime of sweeping mandatory detention for millions of long-present noncitizens," a consequence he describes as "historically unprecedented," "implausible," and "unsupported by congressional design." Dkt. No. 17 at 6. But it is not this court's "task to assess the consequences" of competing interpretations "and adopt the one that produces the least mischief." *Lewis v. City of Chicago*, 560 U.S. 205, 217 (2010). In all events, the legislative history discussed above suggests that Congress amended Section 1225 precisely for the purpose of eliminating the special "equities and privileges" afforded aliens who succeeded in "enter[ing] the United States without inspection"—including, no doubt, the possibility of release during the pendency of deportation proceedings—that were not afforded aliens who "present[ed] themselves for inspection at a port of entry." H.R. Rep. No. 104-469, pt. 1, at 225.

#### e.

Finally, Mr. Cisneros urges the court to follow the numerous district court decisions that have interpreted Section 1225 in the manner he urges here. But the persuasiveness of nonbinding precedent turns on quality, not quantity. As the Tenth Circuit has explained, the fact that "several cases from other jurisdictions" have reached one result simply does not matter if their reasoning is "not persuasive." *Timmons v. White*, 314 F.3d 1229, 1235 (10th Cir. 2003). And in this court's

---

incorporates this statement. Given the statement's self-acknowledged inconsistency with the language of the statute—and, apparently, the language of the interim rule—the court can only conclude that it reflects an assertion of administrative authority (perhaps akin to prosecutorial discretion) not to enforce the statute as written, as well as a representation regarding how the agency intended to exercise that purported authority. The court need not decide whether the agency had such authority: even if it did, its representation of how it intended to exercise that purported authority certainly would not forever bar it from taking a different approach.

judgment, Mr. Cisneros identifies nothing in the reasoning of the cases he cites that is sufficiently persuasive to warrant reading Section 1225 contrary to its plain text.

## B.

In the alternative, Mr. Cisneros argues that his detention without a hearing to determine whether he should be detained or released pending a final removal decision amounts to "indefinite" detention and thus violates his constitutional right to due process.

To be sure, "the Due Process Clause applies to all persons within the United States, including aliens." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (cleaned up). And the Due Process Clause generally does require "the opportunity to be heard" "before an individual is . . . deprived of" "liberty." *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976) (cleaned up).

Given that detention is mandatory under § 1225(b)(2)(A), however, a bond hearing could not remedy Mr. Cisneros's deprivation of liberty and would thus serve no purpose. The court must thus consider whether that deprivation *itself*—that is, Mr. Cisneros's mandatory detention pending the completion of his removal proceedings—violates his due process rights. The court addresses only that question.

In *Zadvydas*, the Supreme Court addressed the detention of two individuals who remained in custody for an extended period after final removal orders were entered against them because the Government was unable to effectuate their removal. 533 U.S. at 684–86. The Court held that such individuals could not be detained for longer than six months absent a "significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. Absent such a limitation, the Court concluded that the prospect of "indefinite"—indeed, "potentially permanent"— detention "would raise a serious constitutional problem" under the Due Process Clause. *Id*. at 690–91.

But "*Zadvydas* . . . has no direct application to aliens who are detained and being given due process"—that is, notice and the opportunity to be heard—"during removal proceedings." *Buenrostro-Mendez*, 2026 WL 323330, at *9. Indeed, the Supreme Court held in *Demore v. Kim* that "[d]etention during removal proceedings is a constitutionally permissible part of that process," at least if it has a "definite termination point." 538 U.S. 510, 529, 531 (2003). The court has little doubt that under the precedents, detention pending a final removal decision comports with due process.

To be sure, Mr. Cisneros seeks to distinguish *Demore* on the ground that the alien in that case, unlike Mr. Cisneros, was detained partly because he had a criminal history and thus posed a potential danger to the public. But he identifies no controlling authority holding that the detention pending a final removal decision of an individual who has illegally entered the United States without inspection or authorization violates due process, at least absent undue delay or some indication that the Government's purpose in detaining that individual is not to facilitate deportation but instead to "lock up and punish aliens who have not committed a crime." *Banyee v. Garland*, 115 F.4th 928, 932–33 (8th Cir. 2024); *see also Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

Further, although Mr. Cisneros hyperbolically asserts that the Government has "effectively" subjected him to "indefinite civil confinement," Dkt. No. 1 at 11, removal proceedings in this case appear to be well underway, and Mr. Cisneros offers no reason to think that they will not be concluded without undue delay or that the Government will have any difficulty promptly effectuating his removal to Mexico if a final order of removal is entered against him. At least under these circumstances, the court rejects Mr. Cisneros's argument that

his statutorily mandated detention pending the completion of his removal proceedings is unconstitutional.

\* \* \*

For the foregoing reasons, Docket Number 1, Mr. Cisneros's Verified Petition for Habeas Corpus, is **DENIED**. Docket Number 11, Request for Expedited Consideration, is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 12th day of February, 2026.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge